WISSER OIL CO., INC., Plaintiff, *v.* GANFRANK HOLDING CORPORATION, Defendant.

Supreme Court, Trial Term, Nassau County, June 1, 1937.

*Samuel Silverman* and *Percy D. Stoddart,* for the plaintiff.

*Patterson, Christ & Griffin* [*Percy F. Griffin* and *L. Kingsley Smith* of counsel], for the defendant.

HALLINAN, J. At the times hereinafter mentioned the defendant corporation was the owner of a certain tract of land located in Garden City, Long Island. One Francis J. Mulgannon owned all the stock of the corporation. On October 20, 1932, the corporation leased a portion of the above tract of land to plaintiff for a period of twenty-one years effective as of November 1, 1932. Subsequent to the execution of the agreement, the tenant entered into possession and fitted the premises for use and occupancy as a gasoline station.

Among other things the lease provided that "the tenant agrees to pay all taxes and assessments, assessed and levied against said premises during the term of the lease and for failure to do so the landlord shall have the privilege of paying the taxes and charging the same as additional rent."

Taxes were assessed against the entire tract, including that portion which had been leased to plaintiff, as a whole. It appears, without contradiction, that on a number of occasions prior to May, 1935, the plaintiff requested the said Francis Mulgannon, on behalf of the defendant corporation, to have the taxes apportioned for the purpose of ascertaining the amount thereof properly allocable against that portion of the property which had been demised to plaintiff. The testimony indicates that, when thus requested, Mr. Mulgannon in effect stated that, since a default in payment of taxes had already been suffered, nothing would be done, for the time being, with respect to procuring an apportionment. On May 18, 1935, Mr. Mulgannon died and thereafter his widow became the sole owner of all the stock of the defendant corporation. During the month of January, 1936, plaintiff discovered that the entire tract of land, including that portion demised to plaintiff, had been sold for unpaid taxes. Subsequently, and in July, 1936, the purchaser of the tax sale certificates served a statutory notice upon the plaintiff, as the holder of an interest in a portion of the property, whereby the latter was given a specified time in which to redeem. Plaintiff thereafter admittedly failed to pay the rent due for the months of October, November and December, 1936. On December 19, 1936, in accordance with a conditional limitation provision contained in the lease, plaintiff was notified by Mrs. Mulgannon, *acting on behalf of the defendant corporation,* that its rights as tenant were terminated because of the tenant's failure to pay taxes and rent.

In anticipation that defendant may institute a summary proceeding before a Justice's Court in the district wherein the property is situated, plaintiff has brought this action for the purpose of having the court adjudge the rights of the parties by the entry of a declaratory judgment.

Among other things, plaintiff seeks to have it declared that defendant is estopped from alleging any default in the payment of the rent due for the months above mentioned. It is said that a defense of such character, being equitable in nature, is not cognizable in the trial of a matter before a justice of the peace.

Reference to that portion of the lease which obligates the tenant to pay an apportioned amount of the whole tax during the life of the tenancy indicates that it fails to specify upon which party, in the first instance, rests the duty of having the same duly allocated by the proper taxing officers. A consideration by way of analogy would seem to indicate that such primary obligation devolved upon the landlord. In *Bristol* v. *Hammacher* (30 Misc. 426) a lease required the tenant of a portion of the entire premises to pay " the annual rent or charge which is or may be assessed or imposed according to law upon the demised premises for Croton water." In an action brought by the landlord to recover an alleged proportionate amount of the water bill, the Appellate Term stated, in deciding against the landlord: " In the case at bar, the clause in the lease contained an express covenant. It is plain and certain in its provisions and contains neither patent nor latent ambiguity, and no extrinsic testimony is necessary to determine its meaning. It obligates the defendants to pay only such charges, for the use of water, as might be ' imposed according to the law ' upon the demised premises. It is evident that there could be no liability, on the part of the defendants under that covenant in the lease, *until such water rent was lawfully assessed upon that portion of the premises occupied by them under the lease.*"

Under the reasoning of the above case it would seem that the obligation on the part of the plaintiff to pay a specific aliquot portion of the tax obviously did not require performance until the amount thereof was legally ascertainable. No duty, however, was imposed upon the tenant, by the provisions of the lease, to initiate proceedings to apportion the tax for, as has been stated generally, " the general principle in the construction of instruments of this character is well settled that an additional liability will not be imposed upon a tenant unless it is clearly within the provision of the lease." (*Ayer* v. *Bonwit*, 161 App. Div. 122.)

In *Hollander* v. *Horowitz* (206 N. Y. Supp. 184) the Appellate Term of this department has stated: " The lease provides that the tenant shall pay the water charges and that upon his failing to pay them they shall be added to the month's rent then due. We think this clearly indicates that the only result to follow from the non-payment of the water charges was that the amount of them should be added to the rent. The failure to pay them did not give the landlords the option of terminating the lease."

It is my conclusion, therefore, that upon the landlord rested the obligation to have the tax apportioned, and until the tax was in fact apportioned, no liability to pay additional rent devolved upon the tenant. What rights, however, flowed to the tenant by virtue of the landlord's failure thus to have the tax apportioned? Specifically, was the tenant justified in withholding the rent due for the months of October, November and December, 1936, by the fact that the landlord had failed to have the tax apportioned? A consideration of the provision of the lease to which I have heretofore alluded immediately discloses the negative of such proposition. This is true for the reason that the provision in question does not, in event of the contingency here discussed, expressly or impliedly confer upon the tenant the right to withhold payment of the rent.

Indeed no such right to retention is claimed by the tenant. On the contrary, the tenant claims that its non-payment of the rent due in October, November and December, 1936, was assented to, if not induced, by the defendant itself, and that no notice withdrawing such assent and demanding payment of the rent was ever given prior to the service of the notice terminating the tenant's estate. The plaintiff, therefore, urges that the defendant is equitably estopped from electing to end the tenancy. The facts upon which plaintiff predicates its claim of an equitable estoppel are substantially as follows:

Subsequent to the death of her husband, Mrs. Mulgannon customarily collected the monthly rent. When she called at the premises to receive payment of the August, 1936, rent, Mr. Wisser, who· was the president of the plaintiff corporation, called her attention to the fact that, although she and her husband, prior to his death, had assured him that the " tax matter would be straightened out," nothing in such regard had been done and that consequently he was fearful of losing his leasehold because of the tax sale. Upon that occasion Mrs. Mulgannon is alleged to have said, " Mr. Wisser, what are you worrying about? Our office is trying to get extension of payment of the taxes and you don't have to worry about it." The following month, when Mrs. Mulgannon again called for the rent, the question of payment of the taxes again was discussed. Upon that occasion it is claimed that Mrs. Mulgannon said, " Mr. Wisser, I see you are awful nervous about it. I'll tell you what I'll do — from now on you keep the rent until we make arrangements. We will get money together and then I'll come down and whatever there is rent coming to us, whatever the portion of the property, then you have to pay your portion of the property and we will straighten the whole thing out."

If Mrs. Mulgannon did in fact thus induce the tenant to believe that it would not be held to a strict accountability in the payment of the rent until the tax matter was adjusted, the doctrine of equitable estoppel is to be invoked in justification of the tenant's failure to perform. In *Thomson* v. *Poor* (147 N. Y. 402, at p. 409) the court has stated:

" We know of no principle of law which will permit a party to a contract who is entitled to demand the performance by the other party of some act within a specified time and who has consented to a postponement of the performance to a time subsequent to that fixed by the contract, and where the other party has acted upon such consent and in reliance thereon has permitted the contract time to pass without performance, to subsequently recall such consent and treat the non-performance within the original time as a breach of the contract. * * *

" The rule is well understood that if there is a forbearance at the request a party, the latter is precluded from insisting upon non-performance at the time originally fixed by the contract as a ground of action. * * * Until he gives notice of withdrawal he has no just right to consider the latter in default, although meanwhile the contract time has elapsed. We think the principle of equitable estoppel applies in such case." (See, also, *Imperator Realty Co.* v. *Tull*, 228 N. Y. 447.)

In view of the fact that Mrs. Mulgannon categorically denies the fact that she ever waived the tenant's obligation to pay rent, the defense insists that no basis has been shown to exist for the application of the doctrine of estoppel. She testified specifically that she never conversed with the officers of the plaintiff corporation with reference to the apportionment of taxes; that in fact she " wouldn't know what apportionment meant; " that she never stated that rent need not be paid until the taxes were apportioned.

It will be observed, therefore, that in the final analysis, the rights of the parties herein depend wholly upon the question whether Mrs. Mulgannon did in fact make the statements attributed to her by the plaintiff.

It is my conclusion that the weight and quality of the evidence which was adduced upon the trial of the action, when viewed together with some regard for the reasonably inherent probabilities of the situation, preponderate in favor of the plaintiff. It is said that the inherent probability of a fact is to be tested by the unquestioned circumstances that surround the main transaction or occurrence. (See *Atlantic Works* v. *Brady*, 107 U. S. 192.) A party will be deemed to have preponderated where the fact to which he testifies is the more consistent with the *probability of truth,* when

reasonably considered in the light of all the facts and circumstances in evidence in connection with the case.

It appears that subsequent to its entry into possession the tenant made extensive improvements upon the property. It caused half of the property to be cemented, installed a 5,000-gallon storage tank, remodeled the building and put in modern equipment. The leasehold itself constituted a valuable asset since it embraced property located on a well-traveled highway. The undisputed testimony, as before mentioned, discloses that Mr. Wisser on behalf of the tenant many times prior to May, 1935, had unavailingly sought to have Mr. Mulgannon procure an apportionment of the taxes. It also reveals that the tenant in January, 1936, apparently alarmed over the tax situation, made an investigation of the tax records in the county treasurer's office and discovered that theretofore the property had been sold to satisfy tax liens. It thus appears that the tenant, at least in the foregoing respects, was particularly alert in seeking to protect its leasehold. It is, therefore, difficult to contemplate that it would directly jeopardize that interest by its deliberate omission, in the absence of an understanding to the contrary, to pay the rentals due for the months in question. What basis is there upon the facts and circumstances here present to form a conjecture that the tenant would knowingly invite a forfeiture of an interest in property, in which it had invested a substantial sum of money for improvements, by a studied breach of the covenant respecting the payment of rent? The evidence discloses no basis in fact upon which to predicate a finding to such effect. Rather it would seem that a conclusion to the contrary effect is justified. In the absence of a specific agreement relating to the subject, the law casts upon the landlord the duty of procuring an apportionment of the taxes. Thus it can well be contemplated that since the landlord had been remiss in this duty, to the tenant's possible prejudice, the landlord did in fact attempt to appease the tenant by permitting it to suspend payment of the rent until the tax situation was adjusted. These circumstances, to my mind, point to the verity of plaintiff's testimony.

Judgment is, therefore, rendered in favor of the plaintiff.