BROAD PROPERTIES, INC., Respondent, *v.* WHEELS INCORPORATED, Appellant.

Second Department, January 14, 1974.

*Simpson, Thacher & Bartlett* (*Michael V. Corrigan* and *Roy L. Reardon* of counsel), for appellant.

*Bennett E. Aron* for respondent.

CHRIST, J. This is an appeal from an order of the Supreme Court, Suffolk County, made on December 5, 1972, partially granting summary judgment to the plaintiff in this action to recover, as additional rent, increased real property taxes levied upon certain property leased by it to the defendant. The Special Term, although granting summary judgment upon two leases which expired December 31, 1969 and containing identical terms, severed so much of the action as seeks to recover tax increases under a new lease and subsequent to that date. In pursuance of the order, a judgment was entered in favor of the plaintiff on December 12, 1972.

The plaintiff is the owner of a 60,000-square foot parcel of land in East Farmingdale, in the Town of Babylon, Suffolk County, which was assessed as a single tax unit. In 1959, the plaintiff leased a 20,000-square foot part of this larger parcel to defendant, consisting of a plot 100 by 200 feet with a 100 by 100-foot square warehouse situated on it. In 1963, an additional 5,000 square feet of building space was leased to the defendant, making a total of 25,000 square feet of leasehold, of which 15,000 square feet was building space and 10,000 square feet surrounding land.

Each lease provided for annual rentals, payable in monthly installments, and contained the following paragraph: " 28th. The tenant agrees to pay as additional rent any increase in land and building taxes levied by the Town of Babylon *on the premises herein demised* occurring on and after the first assessment by the Town of Babylon of said premises as improved property, and such additional taxes shall be added to the rent herein provided for and shall be payable as additional rent as provided for herein for the payment of rent. *The landlord shall have the Town of Babylon designate the premises herein demised as a separate tax lot* as soon as practicable. The tenant shall have the right to protest any tax increase provided for herein, at its own expense and without any charge therefor to the landlord " (emphasis added).

Although both leases expired December 31, 1964, the defendant extended each lease, pursuant to options contained therein, for an additional five years terminating December 31, 1969. It is undisputed that the monthly rental statements, submitted by the plaintiff and paid by the defendant throughout the terms of the leases, made no mention of " taxes ". Rather, the statements simply contained the agreed upon rental, without tax adjustments. It is further admitted that the plaintiff never caused the demised premises to be designated a separate tax lot. The plaintiff could not recall when its total plot was first assessed.

Nevertheless, after the expiration date of the leases and by letter dated January 6, 1970, the plaintiff " apologized " to the defendant for not giving " this matter some attention when it was due several years ago " and enclosed photocopies of tax bills on the demised property. Thus, some 10 years after the defendant's leasehold commenced, the plaintiff was finally making a demand for the additional rent due to tax increases. Although there is disputed testimony concerning conversations between representatives of the plaintiff and the defendant per-

taining to demands for these additional rental payments, it is admitted that the foregoing letter was the first written demand for such payments. Additionally, the record does not contain the slightest reference to whether the " increases " were due to a change in the tax rate or a reassessment.

Notwithstanding the foregoing, the plaintiff claims it is entitled to recover of the defendant a " proportional " amount of the tax increases levied upon the entire plot, for tax years 1964–65 through 1969–70. The trial court granted partial summary judgment to the plaintiff and judgment was entered in the amount of $14,549.19, plus costs and disbursements. Although, for reasons discussed hereafter, the order and the judgment must be reversed, I note that there is ambiguity concerning the " percentages " utilized by the plaintiff and accepted by the court. The record is entirely devoid of any matter concerning the method of computing the increases. For example, with the defendant's leasehold aside, the plaintiff's single tax lot contained 20,000 square feet of vacant land and 15,000 square feet of building space leased to other tenants. There is nothing in the record as to when structure erection on this other 15,000 square feet of building space took place which would have directly effected any tax incidences upon the entire plot. Additionally, the percentages utilized by the plaintiff do not arithmetically equate to the defendant's square-foot leasehold. Thus, were it not necessary to reverse the order and the judgment for the reasons discussed hereafter, a remand for a new assessment would still be required.

The plaintiff's failure to have the demised premises designated a separate tax lot, as mandated by the terms of the leases, substantially impaired the defendant's rights and canceled the defendant's obligation to make additional rental payments. The tax increase clause was a specific benefit to the landlord. But before this advantage would inure, the landlord was obligated to proceed in accordance with its part of the agreement, i.e., to have the Town of Babylon designate the demised premises as a separate tax lot. This would allow the tax apportionment to be made by an independent agency and the tenant could further protect itself, pursuant to the terms of the leases, by protesting the tax authority's action. The tenant was, however, thwarted from availing itself of this protection and the specific tax burden borne by its leased parcel remains unknown.

Indeed, in addition to the landlord's failure to have the tax allocated according to the terms of its agreement, it even failed to give notice to the tenant that it was expected to bear any tax

responsibility at all. As a result, the landlord cannot recover any part of the taxes assessed against its entire tract. The defendant contracted to pay those increases levied upon the " demised " property and the plaintiff, as a means of liquidating those amounts, contracted to have the defendant's leasehold designated a separate tax lot. Since the leases contained this method of computing the tax incidence, this court may not substitute another method of apportionment for that contained in the prescribed agreement.

It has been consistently held that whether covenants are dependent or independent is to be determined by " the intention and meaning of the parties, as expressed by them, and by the application of common sense to each case " (*Rosenthal Paper Co.* v. *National Folding Box & Paper Co.*, 226 N. Y. 313, 320; 33 N. Y. Jur., Landlord and Tenant, § 88; 51C C. J. S., Landlord and Tenant, § 237). Likewise, where the covenants are dependent, the performance of one party's covenant is a condition precedent to the right of that party to recover for a breach of the covenant by the other party (*id.*). Regarding these premises, it has been noted that a tenant's obligation to pay taxes on leased property rests solely upon the terms of the lease and additional liability will not be imposed upon such a tenant unless clearly within the provisions of the lease. Any ambiguity will be resolved against the landlord and in favor of the tenant (*Black* v. *General Wiper Supply Co.*, 305 N. Y. 386, 390; 33 N. Y. Jur., Landlord and Tenant, § 82). And there is no better evidence of the " parties' intention than their practical construction of an agreement, and that rule applies as well to the construction of a tax clause in a lease as to any other contract provision " (*Refrigeration for Science* v. *Deacon Realty Corp.*, 70 Misc 2d 500, 509, citing *Manning Realty Corp.* v. *Topping Bros.*, 120 Misc. 592, affd. 207 App. Div. 852).

Although the specific question presented herein has not previously confronted the courts, certain cases are analogous to this situation. In *Wisser Oil Co.* v. *Ganfrank Holding Corp.* (163 Misc. 357, 358) the plaintiff and the defendant executed a lease which contained the following provision: " ' The tenant agrees to pay all taxes and assessments, assessed and levied against said premises during the term of the lease and for failure to do so the landlord shall have the privilege of paying the taxes and charging the same as additional rent ' ". A representative of the plaintiff requested, on several occasions, that the defendant obtain a separate assessment of the leased premises. The defendant refused, claiming that the plaintiff was already in

default. Justice HALLINAN, in holding for the lessee, opined (pp. 359–360):

"Reference to that portion of the lease which obligates the tenant to pay an apportioned amount of the whole tax during the life of the tenancy indicates that it fails to specify *upon which party,* in the first instance, *rests the duty of having the same duly allocated* by the proper taxing officers. A consideration by way of analogy would seem to indicate that such primary obligation devolved upon the landlord [citing *Bristol* v. *Hammacher,* 30 Misc. 426]. * * *

"It is my conclusion, therefore, that upon the landlord rested the obligation to have the tax apportioned, and until the tax was in fact apportioned, no liability to pay additional rent devolved upon the tenant" (emphasis added).

The *Wisser* holding is especially pertinent, for it held that as a matter of law the primary obligation to have property separately assessed pursuant to a lease which is silent in this regard rested with the landlord. Since no obligation to pay increased taxes devolved upon the tenant until the specific leasehold-property would be separately assessed, as is the situation here obtaining, the landlord could not demand payment of tax increases until he properly fulfilled that covenant. Not only is this proper but equitable. When a tenant negotiates for the leasehold of new improved property, consisting of a portion of the landlord's entire plot, and agrees to pay the tax increases on his portion, it is understandable that he would exact a promise from the landlord that his portion would be assessed separately for taxes, for what better way can the parties liquidate the future increases (cf. *Bristol* v. *Hammacher,* 30 Misc. 426)?

It follows, therefore, that paragraph 28 of these leases contained dependent covenants. The landlord's obligation to have the defendant's portion of the property separately assessed was a condition precedent to the landlord's recovery for any taxes. Indeed, the parties' own actions lead to no other conclusion. The landlord did not demand additional rent during the terms of these leases, for it never had the demised property separately assessed.

Although courts will enforce leasehold provisions wherein a tenant agrees to pay "proportional" increases, the courts may not substitute their judgment for a specific agreement (see, e.g., *Skyway Container Corp.* v. *Castagna,* 27 A D 2d 542 [tenant agreed to pay 8/13 of tax increases]; *Fraser's Million Dollar Pier Co.* v. *Ocean Park Pier Co.,* 185 Cal. 464). Since the instant leases contain not the slightest reference to an appor-

tionment formula, but rather an express obligation on the plaintiff to designate the defendant's demised premises a separate tax lot, it was error for the Special Term to grant summary judgment to the plaintiff. In fact, the leases themselves mandate that summary judgment should have been granted to the defendant.

The order under review should be reversed and the judgment thereon vacated; the plaintiff's motion for summary judgment denied; and the defendant's cross motion for summary judgment granted.

SHAPIRO, Acting P. J., BRENNAN and BENJAMIN, JJ., concur.

Order of the Supreme Court, Suffolk County, dated December 5, 1972, reversed, on the law, with $20 costs and disbursements; judgment of said court entered December 12, 1972 vacated; plaintiff's motion for summary judgment denied; and defendant's cross motion for summary judgment granted.