Leo Brown, J.
In this action the plaintiff, as lessor and former owner of certain improved premises in the Town of Brookhaven, Suffolk County, sues to recover additional rent consisting of real estate taxes withheld by the tenant for the years 1967-1968 and 1968-1969. The defendants are Louis Cardamone, Lydia Cardamone, William Lanzetta, Evelyn G. Lanzetta and Kastar, Incorporated (hereinafter "Kastar”). The case was tried by the court without a jury.
Prior to 1961 the premises were owned by Evly, a partnership consisting of Evelyn Lanzetta and Lydia Cardamone. On May 6, 1961 Evly entered into a written lease with the defendant Kastar as tenant. The lease contained the following clause: "34th. The tenant [Kastar] agrees to pay, in' addition to the rent hereunder, the realty taxes provided the same do not exceed the sum of Four Thousand ($4,000.00) Dollars annually. After five (5) years, the tenant agrees to pay all such taxes unrestricted as to amount, providing the excess over Four Thousand ($4,000.00) Dollars results solely from an increase in the tax rate.”
The five-year period referred to in the quoted paragraph expired on October 31, 1966. On February 9, 1962 the plaintiff purchased the property from Evly, subject to the terms of the lease, which was assigned to the plaintiff. At the closing of title on that date, the four individual defendants executed a certain writing dated that day which, in part, provided as follows:
*627 "The undersigned, jointly and severally, covenant and agree to reimburse Rose Snyder for the net amount of all Realty Taxes upon the hereinafter described realty paid by Rose Snyder, and not required to be paid by the tenant by the provisions of the lease dated May 6, 1961, between Evly Associates and Kastar Incorporated covering said realty, except if such taxes
"1. Are for a tax period after November 30, 1976;
"2. Result from any modification, change, amendment or cancellation of the said lease to which Rose Snyder is a party;
"3. Result from improvements, extensions, additions and alterations to the demised premises, constructed after the date hereof.”
In 1965 Kastar informed the plaintiff that it wished to construct an addition to the building it occupied on the demised premises and requested plaintiff’s consent to do so. It should also be noted that the Kastar lease contained an option by Kastar to purchase the property at a fixed price, which option was actually exercised and title was conveyed to Kastar on August 31, 1971. The plaintiff consented to the alteration and addition to the building in a written agreement dated March 22, 1965. Under the agreement the plaintiff consented to "an alteration to the demised premises consisting of an addition to the present building now located on said premises”. The agreement further contained the following provision in relation to the payment of taxes: "In consideration of Landlord’s consent above provided, Tenant covenants * * * (8) To pay to Landlord as additional rent under the aforesaid lease all increases in realty taxes affecting the demised premises resulting from the making of said alterations.”
Kastar then erected an addition at a cost exceeding $240,-000. The addition was completed and a certificate of occupancy issued on June 14, 1967. The original building contained an area of approximately 31,500 square feet and the addition (new building) contained an area slightly in excess of 28,000 square feet. The prior assessment on the property containing the old building was $22,000, of which $3,000 was for the land. After the completion of the new building, the assessment was increased to $78,500 (including $3,000 for the land). The period covered by the increased assessment was for the tax year 1967-1968, from June 1, 1967 to November 30, 1968. Up to that point, the plaintiff had never paid any realty taxes.
*628 After the increase in the assessment, Kastar continued to pay taxes on the property, but starting in June, 1968 Kastar withheld from the rent for the following two years the sum of $10,674.90 and also caused the plaintiff to pay a portion of the penalties in the sum of $2,481.48 for the two tax years 1969-1970 and 1970-1971. The plaintiff seeks recovery of the rent withheld and the penalties paid, a total of $13,156.38, with interest, as well as legal fees. The defendant Kastar interposed a counterclaim for $13,861.80 for increased taxes and penalties paid by it and which it claims it was not obligated to pay under the agreement of March 22, 1965.
Plaintiffs complaint against the individual defendants is predicated upon the obligation expressed in the agreement of February 9, 1962, under which the individual defendants agreed to reimburse the plaintiff for the net amount of all realty taxes not required to be paid by the tenant under the provisions of the lease of May 6, 1961. However, that agreement expressly provided that the defendants Cardamone and Lanzetta would not be required to reimburse the plaintiff if the taxes
"2. Result from any modification, change, amendment or cancellation of said lease to which Rose Snyder is a party;
"3. Result from improvements, extensions and alterations to the demised premises constructed after the date hereof.”
The court finds that the agreement between the plaintiff and Kastar dated March 22, 1965, consenting to the construction of the new building, constituted a modification, change and amendment of the lease which would relieve the individual defendants of any liability with respect to their undertaking under the agreement of February 9, 1962. Furthermore, it is clear that the increase in taxes resulted from improvements, extensions and additions to the demised premises. In the opinion of the court, the modification of the lease and the construction of the new building constituted improvements, additions and alterations to the demised premises which excluded any liability of the individual defendants to the plaintiff. Accordingly, judgment is awarded in favor of defendants Louis Cardamone, Lydia Cardamone, William Lanzetta and Evelyn G. Lanzetta and against the plaintiff.
With respect to the cause of action against defendant Kastar, the testimony of the witness Arthur Malaussema, senior assistant in the assessment bureau, and Henry Russell Hasse, who at the time was Tax Assessor of the Town of Brookhaven, *629 clearly showed that the increase in the assessment and the consequent real estate taxes resulted from the addition of the new building, constituting a single improvement. Accordingly, the court finds that the increase in the real estate taxes was the result of the addition of the new building.
The defendant Kastar contends that it would have been liable only for the increases in the realty taxes resulting from the construction of the additional building but, because the plaintiff failed to obtain an apportionment of the taxes between the original building and the additional building, it is not liable for any part of the taxes. The cases cited by the defendant Kastar are not in point since they relate to a situation in which either the property leased was only a portion of the entire parcel owned by the landlord or the lease provided that the property upon which the improvements were to be erected was to be designated as a separate tax lot by the landlord and the landlord failed to comply with that provision.
For example, in Broad Props. v Wheel Inc. (43 AD2d 276, 277, affd on opn below 35 NY2d 821), the agreement for increased taxes expressly provided that: "The landlord shall have the Town of Babylon designate the premises herein demised as a separate tax lot as soon as practicable.”
Also, in the case of Wisser Oil Co. v Gan frank Holding Corp. (163 Misc 357) the taxes were assessed against the entire tract as a whole, including that portion which had'been leased to plaintiff. In that case the court held that there was an obligation on the part of the landlord to have the tax apportioned between the leased premises and the remainder of the tract. In the instant case the demised premises cofisisted of the entire parcel and there was no provision in the lease or agreement requiring the landlord either to have the premises upon which the new building was constructed to be apportioned as a separate tax lot or to have the taxes apportioned.
As the court observed in Eichner v Cohen (48 Misc 541, 542-543) where the lease provided that the tenant was to make extensive improvements in language particularly applicable here: "The purpose of the agreement in the lease was that the landlord should be saved harmless from any increase in taxes by reason of the new structure; for it is a matter of common knowledge and common sense that additional improvements imply additional value and, consequently, additional assessment. If, after these improvements were made, the assessed *630 valuation was increased, the increase would be due prima facie to the improvements”. In the case at bar it is abundantly clear that the increase in taxes resulted from the construction of the new building, which resulted in an increase in assessed valuation and, therefore, an increase in taxes.
It has been uniformly held that where a lease provides that a tenant is authorized to make improvements to the demised premises and shall pay any increased taxes resulting from an increase in the assessed valuation of the property or increase in taxes resulting from such improvements, the tenant is obligated to pay for any increase in the taxes. (See Ann 48 ALR3d 287, 294, 295, Landlord and Tenant: Construction of Provision of Lease Providing for Escalation of Rental in Event of Tax Increases; cf Skyway Container Corp. v Castagna, 27 AD2d 542.) In support, the comment cites Eichner v Cohen (supra); Springfield Marine Bank v S. S Kresge Co. (283 F2d 119); Matter of United States of Amer. v Tax Comm. of City of N. Y. (22 AD2d 290) and Gridley v Einbigler (98 App Div 160, affd 182 NY 566). In discussing the case of United States v Tax Comm, of N. Y., the commentary states (48 ALR-3d 295): "Under a lease agreement whereby the Federal Government tenant was entitled to make substantial improvements * * * and whereby the tenant was to bear the risk and burden of increased taxes imposed by reason of any increased tax assessment * * * such tenant which improved the demised premises, resulting in a real-estate tax increase, was liable for the increase”. Thus, it follows that any increase in the real estate assessment and the real estate tax here resulted from the new building erected upon the premises, and that the tenant is liable for all increases in taxes for the tax years commencing in 1967-1968.
With respect to the plaintiffs claim for legal fees, neither the lease nor the modification agreement sued upon contained any undertaking on the part of Kastar to pay legal fees. Furthermore, no proof was offered at the trial to establish the fair and reasonable value of any legal services performed by the plaintiffs attorney. The plaintiff is not entitled, therefore, to recover any legal fees.
Accordingly, judgment is awarded in favor of defendants Louis Cardamone, Lydia Cardamone, William Lanzetta and Evelyn G. Lanzetta against the plaintiff and judgment is further awarded in favor of the plaintiff and against the defendant Kastar, Incorporated, in the sum of $13,156.38, with *631 interest on the rent payments and tax penalties from the respective dates on which the rent was withheld and the penalties paid.
The defendant’s counterclaim is dismissed.