opinion of the court
Jay Stuart Dankberg, J.
This is a holdover summary proceeding in which the petitioner landlord claims respondent tenant has violated a substantial obligation of her lease by having a person occupy the apartment, without landlord’s consent, who was neither the tenant nor a member of tenant’s immediate family.
The facts are relatively simple. It involves the fact pattern of the classic play and motion picture, “The Man Who Came to Dinner”. However, the guest here was neither a man nor a person invited only to dine. In fact, this guest was invited to stay!
The tenant allowed the daughter of a long-time friend to stay with her in the apartment. She apparently in *868 formed landlord orally prior to the service of any notices and in writing thereafter that she was having a guest from out of town for a “few weeks” (apparently confirming an earlier telephone conversation). The landlord claims that the fact that this guest stayed in the apartment violates various clauses of the lease. After trial, it asks the court to evict tenant on this ground.
There was no testimony that this guest paid any consideration for the privilege of staying in the dwelling unit; whether the same be denominated for rent, “use and occupancy”, telephone, gas or electric usage, or other similar possible payment. Rather, based upon the testimony adduced, the court finds that other than consideration based upon 17 years of friendship, no monetary or other consideration was paid for this individual’s time in the apartment.
The only disputes in the testimony were minor and concerned the guest’s exact arrival and departure dates and the specific items of possession with the guest when she arrived. In this regard, the court finds that the guest arrived on March 23, 1980, without furniture, but with two suitcases, a typewriter and a portable heater. The guest departed on or about May 10, 1980, after seven weeks.
Also involved in this summary proceeding, since the instant tenancy is covered by the rent control law — are notices required pursuant to sections 52 and 53 of the Rent, Eviction and Rehabilitation Regulations of the City of New York. The 10-day notice to cure was served March 27, 1980 (a prompt four days after the guest arrived), and the 30-day notice to terminate was served April 15, 1980, and purported to terminate the tenancy as of May 31, 1980.
Although it would appear that these allegations might often arise in New York, thus resulting in a large body of case law, the court’s research has uncovered surprisingly few decisions. Most relevant cases must be updated due to the passage of time since they were decided; numerous recently enacted statutes; the “modern trend” of decisional law (see Houston Realty Corp. v Castro, 94 Misc 2d *869 115, 117-118 [L. Cohen, J.]; Posner & Gallet, Mitigation of Damages in Residential-Lease Breaches: New Trend in 1970’s, NYLJ, April 5, 1978, p 1, col 2, at p 6, col 1); and the massive change in urban life-style that has resulted since World War II in the United States and the New York greater metropolitan region.
Applicable lease clauses are (a) clause 2, which provides in pertinent part that the premises shall be “occupied only by Tenant and members of the immediate family of Tenant”; (b) clause 30: “the apartment will be occupied only by tenant and her husband”; and (c) clause 34, which allows tenant to sublet the apartment for up to three months each year, other than a year in which tenant has a sabbatical leave, during which time tenant might sublet for eight months, in both instances provided that landlord’s prior approval be obtained. (In point of fact, landlord’s consent to potential subtenants had been obtained prior to March, 1980 and no issue to landlord’s good faith is involved in this proceeding.)
Since tenant does not deny having had a guest, and does not claim the guest was a member of her immediate family, the sole issue revolves around the “occupancy” clauses in the lease. Inherently involved herein is a potential conflict between the tenant’s alleged right to free use and enjoyment of her apartment-home and the landlord’s alleged right to control the ability of persons to sleep in apartments in its building.
Generally, the term “occupy” connotes a possessory interest whereby the occupant will “hold or keep for use” (Black’s Law Dictionary [4th ed], p 1231). Important factors which distinguish an “occupant” from a “guest” include: length of time of residence; the purpose of such residence; whether there is a written or oral lease between the tenant-in-chief and the occupant or guest, and what rights and duties are included under such lease; whether rent is paid; what furnishings are on the premises and to whom such furnishings belong; and whether the guest’s or occupant’s possessions indicate an intention to be present temporarily or for a more lasting period (Chawla v Horch, 70 Misc 2d 290 [Kassal, J.]).
*870 The few cases which hold that having a guest violates the “occupancy” clause of a lease are readily distinguished — all seem to rely on 320 East Fifty Seventh St. Corp. v Peckham (63 NYS2d 357). There, a tenant who was hospitalized allowed a family friend to stay in the otherwise unoccupied apartment while the friend attended school for an unstated time period. Allegedly, the friend paid no rent for use and occupancy but paid telephone, gas, electric, food and cleaning bills. Apparently, Trial Term totally thought tenant’s tale truthless of such lack of rent payment; Appellate Term merely affirmed without a formal opinion. However, in a dissent, Justice Eder saw “nothing improbable” in tenant’s allegations and would have held that the lease prohibited subletting and not a mere visit by a guest. As the dissent concludes: “It would be different if a charge of rental was made” (63 NYS2d, at p 358). That case is different from the one at bar, in which there is no claim of any payment, the tenant remained in possession of the apartment and the proposed visit was intended at its outset, to be temporary and brief.
Also, I.R.B. Realty Co. v Newcity (71 NYS2d 869), citing Peckham (supra) as sole authority, is readily distinguished. Tenant there was an 87-year-old man, who went to permanently live with his son in Baltimore when his wife died. He allowed the apartment to be occupied by someone, not a member of his immediate family, which was found to be improper (see Henkin v Ross, 76 NYS2d 558, 559, for these facts). Similarly, in Fiore v Wagner (NYLJ, June 21, 1979, p 6, col 1), the tenant “permitted a friend to occupy and effectively sublease the subject apartment while the tenant resided at another address” (emphasis added).
In Irweis Holding Corp. v Glenn (2 Misc 2d 804), the tenants wanted a third cousin to stay with them “temporarily”, until she found a new residence. The cousin was thus proposed to be a guest for an indefinite period of time. The Appellate Term, on tenants’ default, held (p 805) that such was not a “mere visit or a temporary expedient”, and ordered eviction.
Finally, in One-Two East 87th St. Corp. v Rees (35 Misc 2d 158), on tenants default, without listing the lease terms *871 involved and under circumstances undisclosed in the reported decision, it was held that a friend’s use of an apartment, being “more than a mere visit or temporary expedient”, violated the express terms of a lease, projected into a statutory tenancy. Relying on Peckham and Irweis (supra), as authority, the court held (p 159) that “[t]he mere fact that tenant’s friend paid her no rent for the occupancy does not affect the fact that such use of the apartment, without landlord’s consent violates the lease” (emphasis supplied).
However, a more recent case, and one apparently in keeping with the mores and life-styles of the “modern” enlightened age in which we live, is Messiah Baptist Housing Dev. Fund Co. v Rosser (92 Misc 2d 383). In this case, where there was no evidence of contribution to rent, a female tenant having an overnight male guest for two or three nights a week was found not to be in violation of a lease. Such guest was held (p 386) not to be “an occupant in the sense of one who has taken possession of or exercised dominion over the apartment or of a room therein.”
Classic lease construction is that if there are any ambiguities in lease interpretation, making two constructions possible, any such ambiguities are to be resolved in tenant’s favor (Wasservogel v Meyerowitz, 300 NY 125; Broad Props, v Wheels Inc., 43 AD2d 276, affd 35 NY2d 821; 3 Warren’s Weed, NY Real Property [4th ed], Leases and Lettings, § 10.03). Moreover, the interpretation should be adopted that limits restrictions on the free use of property, since “the law will always favor the free and unrestricted use of property.” (Schoonmaker v Heckscher, 171 App Div 148, 151.) Therefore, any ambiguity in the instant lease respecting the tenant’s right to occupy and use the apartment as she desires, must be resolved in favor of the tenant. Such is also the expressed intent of the rent control and rent stabilization statutes (see Rent, Eviction and Rehabilitation Regulations, § 51; Code of the Real Estate Industry Stabilization Association of New York City, § 50).
In the present case,, contrary to the holding in Peckham (supra), the court finds the testimony of tenant entirely *872 credible. At no time did the tenant give up possession of her apartment nor did the guest exercise any dominion over it. Here, the guest had already vacated the apartment at the time of trial, after a visit which was intended to be temporary at its outset and which lasted a brief seven weeks.
In Messiah Baptist (supra), a tenant having a guest three nights a week was found not to violate lease terms; such amounts to having a visitor almost one half of a year. This tenant, by contrast, had a visitor for but one seventh of a year. Here, indeed, is a situation of “a mere visit or temporary expedient”.
Moreover, pursuant to clause 34 in the subject lease, it was within the contemplation of the parties that tenant might have persons other than herself occupy the apartment for a long period of time each year. Thus, landlord would be hard-pressed to complain about the fact that a person not a party to a lease with it is sleeping in an apartment in its building, or using elevator, water and other similar landlord-provided services.
In light of the above, this court determines that a tenant who allows an individual to stay as a guest for a brief, temporary period without receiving any payment for such use of the premises has not violated the terms of a lease which prohibits occupancy by persons other than tenant of tenant’s immediate family. In order for an individual to “occupy” an apartment, such individual must take possession or otherwise exercise dominion over such apartment, as evidenced by monetary payment, furniture within or brought into the dwelling unit, intended length and purpose of the stay (as measured at its inception), terms and conditions of such stay (e.g., written or oral lease), and possessions of such individual brought into the apartment.
In the instant case, the evidence demonstrates that the individual who “came to dinner” was intended to be and was a true “guest”, invited out of friendship for a brief, temporary period without financial consideration paid for such privilege. The fact that this guest stayed in the subject apartment does not violate the “occupancy” or any *873 other clause of the instant lease and does not subject the tenant to eviction therefor. The proof was that only the tenant and members of her immediate family occupied the apartment in issue during the time under consideration.
Moreover, even if this guest could be said to have “occupied” the subject apartment — and that such occupancy breached the lease — under the facts of this case, such could not be said to be a breach of a substantial obligation of this tenant’s right to continue occupancy in this building. This is based upon the fact that clauses 2, 30 and 34 of the lease do not, in clear, explicit and unambiguous language, evidence any specific intention to prohibit such guest visitors (cf. General Obligations Law, § 5-702, the “Plain English” law). Any such proposed restriction on the free use of an apartment must be narrowly interpreted.
Finally, even if the court found that having this guest violated a substantial obligation of the tenancy and this would require a finding in favor of landlord, in the interests of justice at least, the tenant (who has occupied this apartment since 1966) should be given an opportunity to remove such occupant by way of a conditional judgment (see Fraydun Enterprises v Ettinger, 91 Misc 2d 119). Since termination of a tenancy involves the seeking of drastic relief, in cases where it is not completely clear that tenant’s breach is substantial and material, as here, an additional, reasonable opportunity should be given to tenant to cure (see Alan Realty Co. v Schooler, NYLJ, July 10, 1980, p 6, col 2; Haselnuss v Sharmat, NYLJ, March 20, 1979, p 10, col 6). In the instant case, since the guest has already left the premises, any such conditional judgment would be a mere academic exercise.
Therefore, final judgment is directed to be entered in favor of respondent tenant and against petitioner landlord dismissing the petition with prejudice.