**225 WEST END AVENUE ASSOCIATES, Plaintiff,**

v.

**Fritz BITTORF, Defendant.**

**No. 89 Civ. 7101 (RPP).**

United States District Court, S.D. New York.

Aug. 31, 1990.

Schechter, Brucker & Pavane, P.C., Martin Pavane, New York City, for plaintiff.

Robert L. Lewis, New York City, for defendant.

### OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge:

This is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### BACKGROUND

Plaintiff's predecessor in interest, Wild Bill Realty Corp., and defendant entered into a contract of sale (the Contract) in June 1987 for the 42 unit building at 225 West End Avenue, New York, New York (the Premises).[1] Plaintiff alleges that de-

---

**1.** The factual background is more fully recounted in the Court's Opinion and Order of November 14, 1989 ("Opinion") denying plaintiff's motion for a preliminary injunction. 1989 WL

fendant committed fraud by making misrepresentations to William Eichengrun ("Eichengrun"),[2] before the closing on November 19, 1987. Plaintiff seeks damages based on the contention that he relied on defendant's misrepresentations in an unsuccessful application to the New York Attorney General for approval of a plan to convert the Premises to a cooperative or a condominium ("the conversion plan").

The Attorney General rejected plaintiff's conversion plan because the Premises had one more "long-term vacancy" than was permitted by New York General Business Law § 352–eeee(2) ("the anti-warehousing law") on April 15, 1988, the day plaintiff submitted its conversion plan.[3] The Attorney General found that, in addition to the four apartments listed on plaintiff's application as "long-term vacancies," Apartment 54 was a "long-term vacancy." A "long-term vacancy" is defined as a "dwelling unit[ ] not leased or occupied by bona fide tenants for more than five months prior to the date of such submission [of a conversion plan] to the department of law." N.Y.Gen.Bus.Law § 352–eeee(2). Plaintiff contends that defendant falsely represented that Apartment 54 had not been vacated until November 18, 1987 which caused plaintiff to rely on that apartment not being deemed a "long-term vacancy" on April 15, 1988.

Plaintiff does not claim that defendant did not comply with the requirements for a closing on the Contract.[4] Plaintiff's claim is that it detrimentally relied on misrepresentations made by defendant in the Contract and after the signing of the Contract, which were not required for the closing of the sale.

## DISCUSSION

To grant a motion for summary judgment a court must find that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law because, after sufficient time for discovery, the non-moving party has failed to make a sufficient showing of an essential element of its case as to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Here, plaintiff has the burden of proving fraud which requires proving the following elements: (1) that defendant misrepresented a fact, (2) which was false and known to be false by the defendant, (3) that the representation was made for the purpose of inducing the plaintiff to rely upon it, (4) the plaintiff justifiably did so rely, and (5) the reliance caused injury to plaintiff. *See Clearview Concrete Products Corp. v. S. Charles Gherardi, Inc.*, 88 A.D.2d 461, 453 N.Y.S.2d 750, 754–55 (2d Dept.1982) (citing *Channel Master Corp. v. Aluminum Ltd. Sales*, 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958); Restatement, Torts 2d, § 524).

Plaintiff contends that it has met its burden on this summary judgment motion by bringing forth sufficient evidence to raise

140269. Familiarity with the Opinion is presumed.

2. Plaintiff's predecessor in interest, Wild Bill Realty Corp. is the entity which purchased the Premises. Wild Bill Realty Corp. has assigned the contract for purchase of the Premises to Eichengrun, the general partner of plaintiff.

3. The anti-warehousing law provides that the Attorney General shall not approve a plan for cooperative or condominium ownership in the City of New York
   unless:
       \*    \*    \*    \*    \*    \*
   (e) The Attorney General finds that an excessive number of long-term vacancies did not exist on the date that the offering statement or prospectus was first submitted to the department of law. 'Long-term vacancies' shall mean dwelling units not leased or occupied by bona fide tenants for more than five months prior to the date of such submission to the department of law. 'Excessive' shall mean a vacancy rate in excess of the greater of (i) ten percent and (ii) a percentage that is double the normal average vacancy rate for the building or group of buildings or development for two years prior to the January preceding the date the offering statement or prospectus was first submitted to the department of law.

4. The contract of sale dated June 1987 required defendant to deliver the Premises with five apartments vacant (numbers 2, 21, 24, 27, and 54), but did not contain requirements as to the dates of vacancy.

genuine issues of fact material to: (1) whether defendant misrepresented the dates upon which apartments at the Premises became vacant; (2) whether plaintiff justifiably relied on those representations when applying to the Attorney General on April 15, 1988 for approval of the conversion plan; and (3) whether that reliance was the cause of the rejection of the plan and the consequent injuries to plaintiff.

Plaintiff alleges four misrepresentations by defendant: the Contract, defendant's affidavit of November 19, 1987, an oral statement by defendant on November 19, 1987, and defendant's affidavit of February 23, 1989. The Court finds that the Contract and the affidavit of November 19, 1987 cannot constitute fraud because they fail to offer information upon which plaintiff could justifiably rely for the proposition that Apartment 54 was vacant for less than five months on April 15, 1988. The Court finds that the oral statement and the February 23, 1989 affidavit do not constitute fraud here because plaintiff was not justified in relying on those two representations as the basis for believing that the conversion plan would satisfy the anti-warehousing law and because reliance on the representations in those two documents was not the cause of plaintiff's injury.[5]

### A. The Contract and Affidavit of November 19, 1987

In the Opinion and Order of November 14, 1989, the Court reviewed in detail the texts of the Contract and defendant's affidavit of November 19, 1987, which plaintiff had submitted in support of its fraud claim. The Court found that the Contract and defendant's affidavit of November 19, 1987 made no representations upon which plaintiff could rely either for the proposition that Apartment 54 would not be a "long-term vacancy" on April 15, 1988 or for the proposition that the Premises would satisfy the conditions of the anti-warehousing law

on April 15, 1988. Neither document stated or implied that Apartment 54 had not become vacant earlier than November 15, 1987. *See* Opinion at 7–9. Plaintiff has come forward with no evidence to contradict those conclusions as to the meaning of the Contract and the affidavit of November 19, 1987. Accordingly, the Court finds that the Contract and the November 19, 1987 affidavit are not grounds upon which plaintiff could justifiably rely for the proposition that a conversion plan for the Premises, submitted on April 15, 1988, would satisfy the anti-warehousing statute's five month vacancy criterion.

### B. The Oral Statement at the Closing and February 23, 1989 Affidavit

The two other bases for the alleged fraud are (1) an oral statement Eichengrun claims defendant made to him at the closing on November 19, 1988 ("the oral statement"), *see* Eichengrun Aff. at 6, ¶ 17 (June 4, 1990), and (2) defendant's affidavit, dated February 23, 1989. Those two alleged misrepresentations differ from the Contract and the November 19, 1987 affidavit in that the oral statement stated and the February 23, 1989 affidavit suggested that Apartment 54 was not vacant until after November 15, 1987—less than five months prior to April 15, 1989.

The allegation of the oral statement is contained in an affidavit of Eichengrun submitted on this motion: "In response to my inquiry at the closing defendant advised me that apartment 54 became vacant the day before closing, i.e. November 18, 1987." Eichengrun Aff. at 6, ¶ 17 (June 4, 1990). The affidavit of February 23, 1989 relates the following sequence of events:

Apartment 54 in 225 West End Avenue, was leased to Michael Haemke, beginning in July 1984. Haemke requested permission to sublet in August 1984, which I [defendant] granted. In 1985 Haemke attempted to renew both the

---

**5.** The Court notes that defendant's affidavit of November 19, 1987 and defendant's oral statement of that date pertaining to the dates of vacancy were not required in order to close the sale of the premises, and that there is no evidence presented that defendant was made aware that plaintiff would rely on those representations of vacancy dates in connection with its application for approval of the conversion plan, rather than for some other purpose such as ensuring the proper back rent collections.

lease and the sublet. I was not willing to permit the continued subletting. Haemke thereupon refused to renew the lease. He, nevertheless, remained in possession, while refusing to renew the lease without my consent to a further subletting by him, until November 18, 1987. At that time, while inspecting the building prior to delivery of possession to the purchaser the next day, I observed that Mr. Haemke's apartment was unoccupied. I obtained access by use of the key which Mr. Haemke had delivered on first taking occupancy in 1984. As Mr. Haemke told me he was not interested in renewing the lease unless I permitted subletting, I assumed that he had vacated, and delivered the key to Mr. Eichengrun, the general partner of the purchaser, at the closing the next day.

Pl.Ex. I.

Assuming that plaintiff was justified in relying on both the oral statement and the February 23, 1989 affidavit as grounds for believing that Apartment 54 was not yet vacant on November 15, 1987, the record is conclusive that plaintiff was not justified in relying on those two representations for the proposition that on April 15, 1988 Apartment 54 was not a "long-term vacancy" under the anti-warehousing law. This is because satisfaction of the "long-term vacancy" definition requires not only that the apartment have been vacant for more than five months, but also that the apartment "not [have been] leased or occupied by *bona fide* tenants for more than five months." *See supra* note 3 (quoting New York General Business Law § 352–eeee(2)). An apartment not "leased or occupied by a *bona fide* tenant for more than five months" need not have been vacant during such period. Examination of the Attorney General's explanation of the basis for the finding that Apartment 54 was a "long-

term vacancy" manifests the applicability of this distinction to Apartment 54.

The Attorney General's findings stated:

The affidavit [of February 23, 1989] states that in 1985, the landlord refused to permit continued subletting of Apartment 54 by Mr. Haemke and that Mr. Haemke 'thereupon refused to renew the lease.' While Mr. Bittorf also states [in the February 23, 1989 affidavit] that Mr. Haemke thereafter remained in possession until November 18, 1987, when Mr. Bittorf was inspecting the premises prior to delivery of possession to the purchaser, that statement is not credible in light of the other evidence. Even according to Mr. Bittorf's statement, Apartment 54 was not occupied by a *bona fide* tenant for more than five months before the offering plan was submitted.

Pl.Ex. J. Although the affidavit of February 23, 1989 indicated that Mr. Haemke "remained in possession until November 18, 1987" and suggested that Apartment 54 was not vacant until November 18, 1987, it is clear that the Attorney General concluded that the affidavit indicated that Apartment 54 had not been "leased or occupied by a *bona fide* tenant" prior to any vacancy on November 18, 1987.[6]

The defendant's February 23, 1989 affidavit suggested that due to Mr. Haemke's "possession," Apartment 54 was not "vacant" until November 18, 1987. The defendant's oral statement also states that Apartment 54 was not "vacant" until November 18, 1987. However, the defendant did not make any statement that Apartment 54 had been "leased or occupied by a *bona fide* tenant" through November 18, 1987. Indeed, one of reasons why the Attorney General held that Apartment 54 constituted a "long-term vacancy" was the finding that the February 23, 1989 affidavit actually described a scenario in which Apartment 54 had not been leased or occu-

---

**6.** The Attorney General's finding is consistent with New York landlord-tenant law's definition of "occupy" or "occupancy" as requiring more than mere non-vacancy. *See Mihil Co. Inc. v. Paradiso,* 107 Misc.2d 867, 436 N.Y.S.2d 115 (N.Y.Civ.Ct.1980) (more than brief periods of inhabitation are required for "occupancy"). Thus, a tenant may remain in possession—i.e., retain keys to the apartment and have belongings in the apartment—and not occupy the apartment.

pied by a *bona fide* tenant for over five months.

Based on the foregoing reasoning, the Court finds that the representations in the February 23, 1989 affidavit and the oral statement do not satisfy two of the essential elements of fraud: (1) that plaintiff justifiably relied on the alleged misrepresentation and (2) that the reliance caused the injury to plaintiff. First, plaintiff was not justified in relying on defendant's representations as to "vacancy," and the lack thereof, for the proposition that on April 15, 1988 Apartment 54 was not a "long-term vacancy" under the anti-warehousing law, because the "vacancy" representations do not address whether Apartment 54 was being "leased or occupied by a *bona fide* tenant" within the past five months. Second, the Attorney General's findings articulate an adequate reason, independent of the alleged misrepresentations, for the rejection of the conversion plan. *See Bennett v. United States Trust Co. of New York,* 770 F.2d 308 (2d Cir.1985), cert. denied, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986) (to establish "the required causation" for fraud under New York law, "plaintiff must show that the loss was a 'direct result of the defendant's wrongful actions and [that it was] independent of other causes' ") (citations omitted); *Economou v. Borg–Warner, Corp.,* 652 F.Supp. 1242, 1250 (D.Conn.) (under New York law, there was no fraud because the injurious event would have occurred even if plaintiff had not taken action in reliance on defendant's misrepresentation), aff'd, 829 F.2d 311 (2d Cir.1987); 2 Harper, James & Gray, The Law of Torts, § 7.13, at 465 (2d Ed.1986) ("Reliance, however, is insufficient to establish causation if plaintiff would have suffered the same damage even if he had not relied on the misrepresentation, or if plaintiff's damage otherwise results from causes other than his reliance.") (footnotes and citations omitted).

## CONCLUSION

Plaintiff has alleged four misrepresentations by defendant: the Contract, the affidavit of November 19, 1987, the oral statement of November 19, 1987, and the affidavit of February 23, 1989. Plaintiff has failed to come forward with evidence that it justifiably relied on those representations. In addition, any reliance by plaintiff on the latter two representations does not satisfy the causality requirement of the common law of fraud. Accordingly, there are no genuine issues of fact material to whether plaintiff has a valid claim against defendant for fraud. Defendant's motion for summary judgment is granted. The case is closed.

SO ORDERED.