MARY GOINES, Plaintiff, *v.* PENNSYLVANIA RAILROAD COMPANY et al., Defendants.

Supreme Court, Trial Term, New York County, July 1, 1955.

104

*Sidney J. Ungar* for plaintiff.

*Conboy, Hewitt, O'Brien & Boardman* for Pennsylvania Railroad Company, defendant.

*Strauss & Fitzgerald* for J. Schwan and another, defendants.

TILZER, J. This action concerns an incident which is alleged to have occurred on the early morning of the 21st day of April, 1952, at the Pennsylvania Railroad Station in the borough of Manhattan, city of New York. The plaintiff was in the waiting room with her cousin, a young girl, eighteen years of age, named Miss Taylor. They were present for several hours during which time they became involved in an altercation with the individual defendants, two railroad policemen, employed by the Pennsylvania Railroad Company. These officers caused the arrest of Miss Taylor for loitering at the railroad station in violation of section 1990-a of the Penal Law of the State of New York. While they were taking her into custody the plaintiff, Mary Goines, a married woman, separated, with three children, protested the arrest of her cousin. She then became embroiled in a quarrel with the individual defendants. She protested vehemently about the arrest of her cousin and, persisting in protesting the officers' conduct, the individual defendants caused the arrest of the plaintiff for disorderly conduct, charging that she was interfering with peace officers in the performance of their duty, to wit, the arrest of Miss Taylor. The evidence is clear that as a result of the argument and subsequent events that ensued she received serious and permanent injuries. The same day she and her cousin were booked at the police station, and several hours later appeared in the Magistrates' Court. Miss Taylor pleaded guilty to loitering and received a suspended sentence. The plaintiff was found guilty after a brief trial and received a suspended sentence. Therafter the plaintiff employed counsel, who made an application to set aside the conviction and for a new trial. This motion was granted, and upon a new trial defendant was found not guilty. Plaintiff then instituted this action, alleging three causes of action: first, assault; second, false arrest; third, malicious prosecution.

The case came on to be heard before a jury, and after summations, the court charged the jury. There were no exceptions to the charge to the jury either by the plaintiff or counsel for the

defendants. The case was submitted to the jury at 1:35 P.M. At 3:22 P.M. the jury returned with a request for additional instruction, which, with the consent of all counsel concerned, was given. The problems which arise on this application arise because of the proceedings which followed.

At 5:05 P.M. the jury returned to the jury box, and at that time the clerk attempted to get the verdict of the jury. They returned a unanimous verdict in favor of all defendants on the first cause of action, to wit, assault. On the second cause of action they returned a verdict of ten to two in favor of the plaintiff in the sum of $7,500, plus $500 medical expenses against the Pennsylvania Railroad Company, making a total of $8,000. On the third cause of action, malicious prosecution, they returned a verdict for the plaintiff.

It should be noted that the verdict on the first cause of action was entirely proper. As to the second cause of action the verdict lacked clarity because of two reasons: First, that clearly was demonstrated by the award of $500 for "medical expenses" which was contrary to the instructions of the court and contrary to the law. The verdict for the defendants on the assault charge imports that the jury found as a question of fact that despite the severe and permanent injuries of the plaintiff, the defendants used only such force as was necessary to arrest the plaintiff. Had the plaintiff been successful under the first cause of action she would have been entitled to "medical expenses" and such damage for personal injuries as the evidence warranted. The jury, however, having indicated that the verdict was for the defendants, as a consequence, exonerated the defendants concerning the assault and the damages flowing therefrom, including medical expenses. Accordingly, the award of $500 was contrary to law and contrary to the charge of the court.

The other problem arose concerning the failure to indicate as against whom the verdict was, whether it was against the railroad company and the individual defendants. It is to be noted at this time that the liability of the corporate defendant was predicated upon the theory of *respondeat superior*. It is conceded by all the parties that the liability of the corporate defendant was derivative. It would be necessary to find a verdict against the individual defendants (the railroad company's employees) before a verdict could also be binding against the railroad.

Accordingly, the court instructed the jury to go back for further consideration and to return a proper verdict. They were

instructed to return with a verdict which indicated against whom it was and the sum awarded. The jury again retired, and at 5:22 P.M. the record shows the following proceedings, which are hereinafter set forth.

Following some colloquy on the record, the jury was sent back for further reconsideration for clarification and then returned at 6:25 P.M.

The record then shows that the jury sent a memorandum to the court. The writing contains a question directed to the court as follows: "Is the attached an intelligible and legally adequate statement of the jury's various decisions?" Attached to this question was the report of their verdict. The court then concluded that this was their verdict and proceeded to have the same recorded by the clerk. The verdict was as follows: On the charge of assault the jury found for the defendant unanimously. On the charge of false arrest the jury found for the plaintiff ten to two, damages to be paid by the defendant Pennsylvania Railroad, damages $7,500, medical expenses $500, total $8,000; damages to be paid by the defendant Schwan $1; damages to be paid by the defendant Stewart $1. On the third cause of action, malicious prosecution, the jury found for the plaintiff ten to two, damages to be paid by the Pennsylvania Railroad, six cents; damages to be paid by the defendant Schwan, six cents; damages to be paid by the defendant Stewart, six cents.

Counsel for the railroad company then moved to set aside the verdict with respect to the second cause of action against the Pennsylvania Railroad Company as "contrary to law, against the weight of evidence, and excessive and on the grounds specified in the New York Civil Practice Act."

The attorney for the individual defendants, after consulting with the attorney for the railroad company, made no motions whatsoever.

The attorney for the plaintiff made a motion to set aside the verdict of the jury with respect to the first cause of action and also moved to set aside "that portion of the second cause of action which limits the verdict to the Pennsylvania Railroad and requests that the verdict be against all of the defendants."

Counsel for the railroad company seeks to avoid the consequences of the verdict by claiming that the second attempt by the jury to return a verdict was in effect a verdict for the individual defendants, and that since this is a derivative action against the railroad the verdict against the railroad must be set aside. Counsel for the railroad company contends that what

occurred at 5:22 P.M. when the jury returned was equivalent to a verdict in favor of the individual defendants. The record shows that the following occurred at 5:22 P.M.: " Clerk: Madam Forelady, would you please rise? Forewoman: Yes. Clerk: Have you agreed upon a verdict? Forewoman: Yes. Now on the charge of assault the jury finds for the defendant, unanimous, no damages. On the charge of false — The Court: That is for the defendants. Forewoman: For the defendants. The Court: Yes. Forewoman: On the charge of false arrest the jury finds for the plaintiff, ten to two. Damages, 7500, or $7,500 and medical expense, 500, a total of $8,000. On the charge of malicious persecution [sic] the jury finds for the plaintiff, ten to two, six cents. Clerk: Now is that against — Which of the defendants is that verdict against? Forewoman: Which of the defendants? Jurors: Railway. Forewoman: Oh, the Pennsylvania Railroad. Clerk: And with respect to the individual defendants, what is your verdict? Forewoman: Well, what — Jurors: No verdict. Forewoman: No verdict. The Court: Well, is your verdict with respect to the second cause of action — what is it? Is it against all of the defendants? Forewoman: Well, I think the total of $8,000 would — would — A Juror: No distinction. Forewoman: There was no distinction made really. The Court: Well, you can't do that. I would suggest that the jury go back again. The verdict must be against one or all of the defendants, as you're satisfied by the evidence. Now I think it best, rather than have colloquy openly in court, that you go back and decide whom that judgment, $8,000 is against ". In the light of what occurred at that time the verdict was neither final nor conclusive with respect to the two individual defendants. The record fails to support the defendant's theory that the jury's return was tantamount to a verdict for the individual defendants. Moreover, the law is clearly against the defendants.

It is axiomatic that in matters of substance the court cannot invade the province of the jury. The actual intent of the jury governs. A verdict which has been announced and entered in the clerk's minutes is neither final nor conclusive, if it fails to express truly the conclusion which the jury arrived at. It will be observed that counsel for the railroad company has taken two lines out of the entire context of the proceedings following the return of the jury in an attempt to establish its position. A reading of the entire record will clearly establish that when the words " No verdict " were used by the jurors it was immediately rectified by them, and then the court under a proper charge resubmitted it to them for reconsideration. It will be

noticed that throughout the record the court was meticulous in attempting to get the jury to make all decisions in the jury room, and that if they had any request for further information that it be submitted to the court in writing. The forewoman was an elderly lady who had extreme difficulty in reporting the verdict. The record shows that some of the jurors made statements and asked questions. In the sound discretion of the court, and in order to have some degree of orderly procedure, the court adopted the policy of requesting the jury to have whatever deliberations they desired, in the jury room, and then if they had any question to submit it in writing.

The cases relied upon by the attorney for the railroad company are not analogous to the case at bar. In all of the cases cited the verdict of the jury was accepted by the court and entered by the clerk. In the instant case the court, relying upon its inherent powers, returned the jury for reconsideration. The court had never invaded the province of the jury and desired only to find out exactly what the jury had decided upon. As was said in *Hatch* v. *Attrill* (118 N. Y. 383, 389): "When, therefore, the jury found the plaintiff entitled to recover, their further duty was plain. * * * The province of the jury was not to any extent invaded by this action of the court. And before the verdict was recorded, it was within the recognized power of the court for the purpose, and as done in this instance, to send the jury back to reconsider their verdict."

It is very significant that the main charge requested the jury to return its verdict on the first cause of action (assault) " for the plaintiff, or for the defendants, or any of them as the evidence satisfies you. As to the second cause of action, false imprisonment: for the plaintiff, or the defendants or either of them, as the evidence will satisfy you and the third cause of action malicious prosecution: for the plaintiff or for the defendants as the evidence satisfies you ". When the jury found for the defendants it clearly indicated " for the defendants " in accordance with this instruction. Thus, as to the first cause of action the return of the jury consistently held " for the defendants ". As to the other two counts, the jury's return was always for the plaintiff. It was never for the defendants. If the jury had at any time intended to hold for any of the defendants it would have clearly indicated that decision. The report of the jury was not complete, because it failed to indicate who the judgment for the plaintiff was against, and it was because of this important factor in the return of the verdict that **the jury was returned for further deliberations. Carmody-Wait,**

Cyclopedia of New York Practice, in discussing the power of the court to give additional charge after retirement of the jury, writes as follows (vol. 6, pp. 632–633): " § 21. *Generally.*— The court has power to recall the jury, and to further charge them or to correct any supposed error in the charge as made, or in the refusals to charge. Also, where the jury are in doubt about some point of law involved, it is proper for them to come into court and state their request, and receive the law from the court. Likewise, where a communication to the court by the jury shows that they are considering a question which is not in issue, which has not been submitted to them, and which may have a controlling effect upon their verdict, the jury should be recalled and instructed in regard thereto." A verdict is of no force until it is received and recorded. It would appear that the power of the courts even survives the recording of the verdict by the clerk of the court. Thus the court in the case of *Wirt* v. *Reid* (138 App. Div. 760) held as follows: "The principle established by these cases applied to the case at bar seems to me to decide the questions presented. The court has power over its record so as to correct mistakes and make the records state correctly the facts as they existed. It has power where a verdict is returned and entered on a subsequent day to correct the record of the verdict so as to correctly express just what the jury decided, and for that purpose may receive the affidavit of jurors as to the verdict that they intended to render. It has power where a sealed verdict has been rendered but which when introduced is objected to by some of the jurors who have signed it to send the jurors back to consider the verdict. *And it has power when the jury has failed to find a verdict on one or more issues submitted to them to direct the entry of the verdict upon such issues where it is clearly established by the affidavits of the jurors that such a verdict was intended.*" (Emphasis supplied.) Similarly, Carmody-Wait, Cyclopedia of New York Practice, states the rule as follows (vol. 6, pp. 669–670): " § 25. *Sending Jury Back to Reconsider.*— A case being still sub judice and the jury not having been discharged finally, the court has the power, within limitations, to direct them to retire for a reconsideration of the determination which has been reported as their verdict. There may be a direction to retire, if the verdict needs correction or is imperfect, or if the jury, when polled, are unwilling to assent to it. * * * A reconsideration of the case may be directed as to matters of substance as well as to altering the form or removing an obscurity. The court has

the power to refuse to receive a verdict which is not such a one as the jury, under the charge of the court, is at liberty to render, and to direct the jury to retire and reconsider the verdict under the directions of the court.''

The Appellate Division, First Department, reasserted the rule that it was the real intention and purpose of the jury which governed their verdicts (*Rush* v. *Jagels "A Fuel Corp.*", 264 App. Div. 535). In that case the court held that in a tort action against a corporate defendant and two individual defendants, wherein the jury rendered a verdict for the plaintiff and against the corporate defendant, but not against the individual defendants, the trial court properly corrected the error of the clerk of the court in improperly recording a verdict in favor of the defendants individually and had the power to compel an entry in the clerk's minutes which would reflect correctly the finding of the jury. The court also held that where there was doubt as to whether the verdict was against the driver as well as the owner, the trial court was in duty bound to charge in order to ascertain what the jury's intention and decision was.

The courts should not countenance a situation where after several days' trial the jury fails to return a verdict which disposes of all the issues presented. It is the court's duty to see to it that the work of the jury is culminated by a true report of their intentions and decisions.

The court charged the jury that they may award punitive damages. Their action indicates they did so. Exemplary or punitive damage has been defined as follows: '' Exemplary damages are damages on an increased scale, awarded to the plaintiff over and above what will barely compensate him for his property loss, where the wrong done to him was aggravated by circumstances of violence, oppression, malice, fraud, or wanton and wicked conduct on the part of the defendant, and are intended to solace the plaintiff for mental anguish, laceration of his feelings, shame, degradation, or other aggravations of the original wrong, or else to punish the defendant for his evil behavior or to make an example of him, for which reason they are also called ' punitive ' or ' punitory ' damages or ' vindictive ' damages, and (vulgarly) ' smart-money.' (*Springer* v. *Fuel Co.*, 196 Pa. St. 156, 46 A. 370; *Scott* v. *Donald*, 165 U. S. 58, 17 S. Ct. 265, 41 L. Ed. 632; *Gillingham* v. *Railroad Co.*, 35 W. Va. 588, 14 S. E. 243, 14 L. R. A. 798; *Murphy* v. *Hobbs*, 7 Colo. 541, 5 P. 119, 49 Am. Rep. 366). It is said that the idea of punishment does not enter into the definition; the term being employed to mean an increased

award in view of supposed aggravation of the injury to the feelings of plaintiff by the wanton or reckless act of defendant (*Brause* v. *Brause,* 190 Iowa 329, 177 N. W. 65, 70).'' (Black's Law Dictionary [4th ed.], pp. 467–468.)

Exemplary damages as discussed in Corpus Juris Secundum (vol. 25, Damages, p. 705): '' The theory of exemplary, punitive, or vindictive damages, or, as they are sometimes, as discussed in section 2 supra, called, ' smart money,' involves a blending of the interests of society in general with those of the aggrieved individual in particular. According to the more generally accepted doctrine such damages are awarded by way of punishment to the offender, and as a deterrent, warning, or example to defendant and others, or even, it has been said, as an expression of the indignation of the jury.''

The origin of this doctrine has been described as follows: '' According to some authorities the practice of allowing exemplary damages had its origin in cases involving elements of recovery incapable of pecuniary estimate, and hence, of necessity, peculiarly within the discretion of the jury. Another theory advanced has been that the doctrine had its origin and foundation in a failure to recognize as items of recovery for which compensation could be given elements which should have been so regarded. Whichever theory may be correct the right of a jury in certain cases to award exemplary damages has been said to be as old as the right of trial by jury itself, and, while objections have been advanced, the doctrine is now one of general acceptation '' (25 C. J. S., Damages, p. 708).

Mr. Justice SHIENTAG, writing for the Appellate Term, First Department, in *Sanders* v. *Rolnick* (188 Misc. 627, 631), clearly sets forth the law in the State of New York as follows: '' Damages, other than nominal, that are recoverable in certain types of tort actions, of which false imprisonment is one have long been classified as compensatory and punitive in character. Compensatory damages, whether general or special, serve to make good, so far as it is possible to do so in dollars and cents, the harm done by a wrongdoer. Punitive damages, on the other hand, as the name implies, act not by way of compensation but by way of punishment of the wrongdoer and as an example to others. Such damages may be awarded in a proper case only where, and to the extent that, the wrongdoer has acted maliciously, wantonly or with a recklessness that betokens improper motive or vindictiveness. Moreover, even in a case where punitive damages may be warranted by the facts, it is for the jury in its discretion to say whether such damages

will be awarded (Voltz v. Blackmar, 64 N. Y. 440, 444; Reid v. Terwilliger, 116 N. Y. 530).''

As was said in the *Matter of Publishers' Assn.* (*Newspaper Union*), 280 App. Div. 500, 506): '' The classic statement of Judge CARDOZO in *Loucks* v. *Standard Oil Co.* (224 N. Y. 99, 112) that ' We have no public policy that prohibits exemplary damages or civil penalties * * * ' New York has, of course, allowed punitive damages for a few willful or wanton torts.''

It was clearly within the jury's province to award punitive damages in this case.

Indeed, the court held in *Buckin* v. *Long Island R.R. Co.* (286 N. Y. 146, 149): '' No objection was made by the plaintiff owner to this charge, nor did he make any requests to charge. Thus, although erroneous, this charge became the law of this case ''.

While the verdict of the jury on the first count imports that there were no actionable facts which would sustain a verdict in assault, they saw fit, taking the entire incident into consideration, to award damages against the Pennsylvania Railroad in the sum of $7,500, and to award damages against each of the individual defendants, in the false arrest case, of a dollar each and, in the malicious prosecution, against all three defendants, of six cents each. Thus, they were complying with the court's charge in rendering a verdict separately on each of the causes of action set forth in the complaint and subsequently rendering justice on the entire incident involved. They undoubtedly disregarded the testimony with respect to the personal injuries sustained by the plaintiff (some of which were of a permanent character) and rendered to the plaintiff a sum which was not in compensation for the injuries and damage sustained but by way of punitive damages.

The least that can be said of the defendants' action was that they took a woman who at that time was unknown to them and who had conducted herself as a lady (according to the defendants' testimony on cross-examination), who was married though separated, the mother of three children, and because she saw fit to inquire as to the cause of arrest of her woman companion, subjected her to treatment which resulted in severe personal injuries in her arrest and prosecution. The Pennsylvania Railroad is liable for all of the injurious consequences which resulted from this wrongful act. She was subjected to the intolerable indignity of being dragged through Pennsylvania Railroad Station, being held for a while, brought to the police station and there booked for an offense and subsequently taken to the Magistrates' Court. She was tried without counsel and found guilty

and immediately employed counsel to rectify this grave error. Her counsel was successful in having the case reopened, and upon the retrial she was acquitted. Her constitutional rights were ruthlessly invaded. The aggravation of her personal injuries resulting from the arrest, in addition to the suffering due to the humiliation and shame in being taken from a public place and arrested, brought to the station house, subsequently to the Magistrates' Court and tried, is something that surely must have aroused the jury, as is indicated by their verdict. Because of her incarceration and the unusual invasion of her personal rights, these matters were properly considered by the jury in fixing the damages.

The question then arises whether it was within the power of the jury to award damages in the sum of a dollar against the individual defendants and the sum of $7,500 against the Pennsylvania Railroad. Bearing in mind that the jury had already decided that the facts did not establish an actionable case for assault, and that all the testimony that related to the personal injuries both by the plaintiff and her doctors was not considered by the jury, the jury nevertheless decided to award a sum as punishment as a lesson to the railroad company which they deemed to be directly responsible for this conduct. The reasoning and rationale in all the cases and textbooks written on punitive damages seems to find its just place in this case. Firstly, the jury had a right to consider the financial responsibility of the Pennsylvania Railroad and the two special officers, the defendants in this case (see 1 Clark on New York Law of Damages, § 54, and cases therein cited). It requires the citation of no authority to establish that the jury was justified in believing that the Pennsylvania Railroad Company's financial ability to pay $7,500 is comparable to the individual defendants' financial ability to pay $1. A fine of $7,500 against the railroad company would have the same effect as a fine of $1 would have upon the individual defendants. Moreover, if this be deemed as a lesson for all future events, the jury exercised wisdom in fixing the responsibility where it belonged. They recognized that a verdict against the individual special police officers would have only an effect on the two officers involved, whereas a verdict against the railroad company, which was responsible for the conduct not only of these officers but all other persons similarly engaged, would have a very wholesome effect. The railroad company would in the future supervise its employees so as to prevent a recurrence of an incident such as here involved. That the jury had a right to do so has been firmly established by law.

Thus, where the proprietor of a retail department store adopted a system for the detection of thefts which subjected customers to the indignity of being searched by his employees on mere suspicion and without any reasonable grounds for believing them guilty of theft, and in pursuance of such system a customer was against her will taken into a room and searched, it has been held that this presented a proper case for awarding exemplary damages in the discretion of the jury (*Stevens* v. *O'Neill*, 51 App. Div. 364), VAN BRUNT, P. J., saying (p. 367): '' Punitive damages are given, not only as a punishment to the defendant for a wrongful act, but also as a warning to others. Although there was no evidence of any express malice against this plaintiff individually, the act was done in pursuance of a system which had been adopted in that store; and if this system was such as to place an innocent customer in the position in which the plaintiff's evidence shows that she was placed, the jury had the right to say that the results of this system were of such a character as to require rebuke by way of punitive damages in order that innocent people should not be placed in the position which this plaintiff was placed without any fault upon her part.''

In *Latasa* v. *Aron* (59 Misc. 26) the court held: Where the jury in an action for false imprisonment are warranted in finding that one of the defendants was guilty of actual malice and that the other defendant was innocent thereof, a verdict, by which compensatory damages against each defendant are fixed at $200 and punitive damages in an additional amount of $2,300 are assessed against the defendant actuated by malicious motives, is valid. (Headnote.) The court in the above case concluded at pages 27–28: '' I am convinced that the jury in this case honestly endeavored to render a just verdict, and although the form in which it returned was unexpected by both the trial court and counsel, yet it seems to me to accord with reason and common sense. In my opinion, aside from the purely legal aspect of the case, the evidence furnished ample warrant for the verdict rendered.''

In *Prince* v. *Brooklyn Daily Eagle* (16 Misc. 186) the court said at pages 189–190: '' It is contended that as the jury found that the plaintiff was damaged only nominally, it was not a case for punitive damages. It is said that it would not have been error to have charged the jury that if they found that the plaintiff was damaged only nominally, they should not give punitive damages. There is authority for this (*Stacy* v. *Portland Pub. Co.*, 68 Me. 279), but I do not think it is the law of this state. A person may be of such high character that the grossest libel would

damage him none; but that would be no reason for withdrawing his case from the wholesome, if not necessary, rule in respect of punitive damages. It is in such cases that the rule illustrates its chief value and necessity."

In *Buteau* v. *Naegeli* (124 Misc. 470, 472) this principle was again recognized.

Careful consideration of the jury's action indicates that they exercised care and wisdom in making their decision. The incident involved was divided by law into three separate causes of action, and under the law they were required to bring in three separate verdicts. In the case of *Beardsley* v. *Soper* (184 App. Div. 399) the Appellate Division clearly indicated that there was difficulty in deciding as to where an assault and the false imprisonment begins. Such a situation has confused the courts. The law may divide each cause of action separately, but the facts are so interlocking as to time and place that it is difficult of separation and division. The jury was also charged that they could compensate the plaintiff once only for the same wrong.

I am convinced that the jury attempted to render justice conscientiously and according to their best judgment. As was said by PECKHAM, J., in *Hodgkins* v. *Mead* (119 N. Y. 166, 171): "In following rules of practice for the due and orderly administration of the law, care should be taken that justice is not smothered by a too slavish adherence to the mere forms and technicalities of procedure."

As a general rule it is within the province of a jury whether punitive damages may be awarded and, if so, the amount is entirely within their discretion. This court cannot reduce this amount unless the verdict is the result of passion, prejudice or mistake (see 13 C. J. S., Carriers, § 854; 1 Clark on New York Law of Damages, § 56, and cases cited therein).

It is held in Corpus Juris Secundum (vol. 25, Damages, p. 737): "There is no fixed standard for the measurement of exemplary or punitive damages; the amount of the award is a matter largely within the discretion of the jury * * * on due consideration of the attendant circumstances" (see, also, 1 Clark on New York Law of Damages, pp. 101–102).

In view of all the facts and attendant circumstances I am unable to conclude that the amount of $7,500 is excessive. To do so would be merely substituting my judgment for the jury's judgment.

All motions made by the plaintiff to set aside the verdict on the first cause of action "for the defendants" are denied. The jury's decision on this cause of action was a factual decision

solely within their province and the court is not disposed to overrule the decision of the jury on a purely factual question.

For the reasons set forth herein the court denies the plaintiff's application to increase the verdict against the individual defendants to read the same as it was reported against the railroad company. It has been demonstrated in this opinion that the court is without power to do so.

The verdict on the second cause of action in favor of the plaintiff and against the railroad company is modified and decreased by the sum awarded for medical expenses in the amount of $500; as so modified the verdict for the plaintiff is in the sum of $7,500 against the railroad company, in the sum of $1 agains' the defendant Schwan and in the sum of $1 against the defendant Stewart.

The verdict of the jury stands in the third cause of action granting damages to the plaintiff against the three defendants, each in the sum of six cents. Let judgment be entered accordingly.