OPINION OF THE COURT
Leonard N. Cohen, J.
The order dated November 22, 1977 is recalled and revoked on consent of both sides in order to determine the sole stipulated motion in these nonpayment summary proceedings seeking dismissal for lack of jurisdiction for failure of pe *116 titioner to plead compliance with section 235-b of the New York Real Property Law.
These proceedings were commenced pursuant to subdivision 2 of section 711 of the New York Real Property Actions and Proceedings Law, which provides for an eviction remedy if the landlord establishes that "[t]he tenant has defaulted in the payment of rent, pursuant to the agreement under which the premises are held”. Pursuant to subdivision 4 of section 741 of the Real Property Actions and Proceedings Law, the petitioner is required to "[s]tate the facts upon which the special proceeding is based.”
The respondents urge that one of the material facts upon which the proceeding is based is compliance with section 235-b of the Real Property Law, which provides that in every rental agreement, a landlord warrants habitability of the premises. Failure to so allege, the tenants contend, is a subject matter jurisdictional defect requiring dismissal of the petition. Moreover, respondents argue, the petitioner not only must plead, but must also prove, as part of its prima facie case, such performance. Neither common law nor statutory authority expressly imposes this requirement.
The petitioner contends that summary proceedings are a creation of statutes which, in derogation of common law, must be strictly construed. All allegations required to be pleaded in a petition it is argued, are expressly enumerated in section 741 of the Real Property Actions and Proceedings Law or in the New York City Civil Court Rules (22 NYCRR 2900.21 [e] [f]). The former is broadly expressed and the latter relates specifically to rent control status and registration as a multiple dwelling. The fact that section 235-b of the Real Property Law is not specifically referred to in any of the above, is therefore dispositive, according to the petitioner.
In deciding this case of first impression, the court relies upon the legislative intent of section 235-b of the Real Property Law and the public policy which this statute, together with section 110 of the New York City Civil Court Act seek to advance. The statutory warranty of habitability represents a significant and beneficial change in landlord and tenant housing law. It guarantees as a matter of law that every agreement for the rental of residential property covenants that the premises are fit for human habitation and not subject to any conditions which would be dangerous, hazardous or detrimental to life, health or safety. Such a warranty is not waivable. *117 (Cosmopolitan Assoc. v Ortega, 90 Misc 2d 437.) The public policy underlying this statute is obvious. It is the owner’s responsibility to provide decent and safe housing. This responsibility is so compelling that the rental obligation, once an independent covenant, is now dependent on the landlord’s compliance with section 235-b of the Real Property Law. The common law equivalent of section 235-b of the Real Property Law likewise applied the interdependence and mutuality of lease terms and conditions. (B.L.H. Realty Corp. v Cruz, 87 Misc 2d 258; Reichick v Matteo, NYLJ, Jan. 23, 1978, p 13, col 2; Restatement, Property 2d, Landlord and Tenant, § 7.1; Boston Housing Auth. v Hemingway, 363 Mass 184; Javins v First Nat. Realty Corp., 428 F2d 1071, cert den 400 US 925, and cases cited therein.) Thus, the tenant may not be evicted by a summary proceeding because of nonpayment of rent if the landlord has breached the warranty of habitability. (Covington v McKeiver, 88 Misc 2d 1000.) If the warranty is breached, the court may either fully or partially abate the rent. (Morbeth Realty Corp. v Velez, 73 Misc 2d 996; Restatement, Property 2d, Landlord and Tenant, § 11.1.) Or, it may apply the rent to the tenant’s reasonable cost incurred in eliminating the breach. (Jackson v Rivera, 65 Misc 2d 468; Restatement, Property 2d, Landlord and Tenant, § 11.2.) This modern view of the lease as essentially a contract between the landlord and the tenant comprised of interdependent and mutual considerations is a radical departure from the old common-law doctrine of caveat emptor which dominated the law in this area for so long. (57 E. 54 Realty Corp. v Gay Nineties Realty Corp., 71 Misc 2d 353; Lefrak v Lambert, 89 Misc 2d 197; Morbeth Realty Corp. v Velez, supra; see, also, Posner and Gallet, Mitigation of Damages in Residential-Lease Breaches, NYLJ April 5, 1978, p 1, col 2 for cases cited therein.)
Changes that have recently taken place in landlord and tenant housing law evidence both the court’s and the Legislature’s recognition that the demands of urban society require a re-evaluation of the rights and obligations of landlords and tenants. Across the Nation, there is a substantial body of statutory and common law reflecting a trend that no one should be allowed or forced to live in unsafe and unhealthy housing. (See Restatement, Property 2d, Landlord and Tenant, ch 5.) Significant changes in common-law doctrine are generally the product of legislation, or the codification of evolving *118 common-law concepts consistent with reasonable necessity. The task of modifying the existing body of the law to fit the structural changes wrought by the Legislature often, of necessity, is left to the courts with the expectation that given the purposes and public policy, they will mould substantive doctrine to render these goals effective. (Landis, Statutes and the Sources of Law, Harvard Legal Essays 1934, pp 222-223.) As stated by Governor Hugh Carey in his message approving section 235-b of the Real Property Law, this bill moves the law of landlord and tenant into the twentieth century. But, he also noted that: "Many of the comments received on this bill have expressed concern over its failure to establish procedures for enforcement and remedies for breach of the warranty. It may have been possible to expressly provide for procedures and remedies. However, the circumstances and situations in which tenants will be seeking to enforce the warranty will take many forms. Tenants have utilized the doctrine affirmatively as well as defensively; as a counterclaim, set-off, and defense in non-payment of rent proceedings. The remedies have been complete or partial abatement of rent and reimbursement for repairs made by tenants themselves. It will be the courts’ function to fashion remedies appropriate to the facts of each case”. (NY Legis Ann, 1975, pp 437, 438.)
After the Legislature creates the substantive right, it is the court which must devise the procedure. (Shaw, New Law of Implied Warranty of Habitability, NYLJ, Sept. 2, 1975, p 1, col 2.) In an attempt to fashion procedure for the enforcement of section 235-b of the Real Property Law, this court finds that as one of the facts and circumstances upon which a nonpayment proceeding is based, it is necessary for the purposes of subject matter jurisdiction for the petitioner to allege compliance with section 235-b of the Real Property Law. Proof of that allegation is also necessary to establish the petitioner’s entitlement to rent.
Traditionally, a breach of this implied warranty is raised as an affirmative defense to a nonpayment eviction proceeding with the burden of proof on the party pleading the defense. However, the line of cases from which the implied warranty doctrine evolved as a defense, generally, predated the statutory owner obligation. The enactment of the statute has created another material and essential fact upon which the nonpayment proceeding is based within the meaning of subdi *119 vision 4 of section 741 of the Real Property Actions and Proceedings Law.
The warranty of habitability, unlike other clauses in the standard form lease has been isolated by the Legislature as a nonwaivable owner obligation, designed to ensure habitable housing and the implementation of public policy. The tenant’s remedies under sections 743 and 755 of the Real Property Actions and Proceedings Law to assert a breach of the warranty as an affirmative defense or counterclaim remain unaffected. (It is noted the tenant may affirmatively seek rescission of a lease on the ground of a material breach including that of warranty of habitability.)
The practical effect of this procedural requirement is not prejudicial to the petitioner. Certainly this is the case, where the premises are concededly habitable and safe. Should the petitioner be aware that conditions of the premises are violative of section 235-b of the Real Property Law, then this requirement prudently forewarns the owner to remedy the conditions prior to commencement of a nonpayment proceeding, consistent with the law and public policy. The foregoing acts as a deterrent to certain landlords who are unwilling to provide proper upkeep for their properties without penalizing those with a history of proper maintenance. (15 & 19 West 55th St. Realty Co. v Mazzola, NYLJ, Oct. 26, 1977, p 11, col 2.) Should the tenant’s conduct be violative of section 235-b of the Real Property Law, or otherwise affect the owner’s compliance, this can be readily pleaded.
In construing the meaning of "facts” as required in the petition under subdivision 4 of section 741 of the Real Property Actions and Proceedings Law, to include allegations of compliance with section 235-b of the Real Property Law, it would appear that this procedural requirement is consistent with not only the legislative history, but also the general spirit, object and purpose underlying the enactment of section 235-b of the Real Property Law. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 96.)
This jurisdictional defect however, is amendable in this proceeding of first impression. Accordingly, petitioner is granted leave to amend the petition within 10 days from service of notice of a copy of entry of this order to include an allegation of compliance with section 235-b of the Real Property Law. If such amendment is not made as herein, the motion to dismiss is granted. If so made, the motion is denied. *120 As to the question of whether the jurisdictional defect is otherwise amendable, it need not be reached. However, the court is mindful that a tenant alleging the breach as an affirmative defense or counterclaim may not be prejudiced or taken by suprise if amendment is permitted at the time of trial. The balance of the relief requested on motions of the parties is referred to Trial Part 49 for all purposes unless otherwise finally determined by stipulation between the parties.