OPINION OF THE COURT
Margaret Taylor, J.
At bar are three nonpayment proceedings. The tenants have interposed the affirmative defense of breach of warranty of habitability as well as a counterclaim for breach of contract seeking a rent abatement for the period during which they withheld rent plus compensatory and punitive damages.
In a previous proceeding in this court brought against 20 other tenants of the same building (111 East 88th Partners v Simon, 106 Misc 2d 693) (hereinafter Action No. 1) a determination was made, after a 17-day trial at which 34 *961 witnesses testified, that this landlord had willfully and maliciously breached the warranty of habitability by causing the building’s services to deteriorate and by withholding services from all the tenants in the building. Among the services found to have been curtailed by this landlord were heat and hot water, passenger elevator services, buildingwide garbage collection and disposal, and building security (due to a failure to repair a broken lock on the building’s main entrance).
In addition to abating the rent due to this landlord by 55% for several months and 27% for the balance of the period in question, the Civil Court in Action No. 1 found that there had been a “wanton disregard of the health and safety of these tenants by this landlord” (111 East 88th Partners v Simon, supra, at p 696) and it awarded punitive damages to the tenants (p 698) “to be allocated *** in proportion to their rents.” In part this was due to the finding that the landlord had installed “lugs” on the heater with the intent of illegally limiting heat and hot water.
The tenants have moved for partial summary judgment on the grounds that for the months covered by the previous decision, the landlord should be collaterally estopped from relitigating the issue of abatement of rent and punitive damages.
The landlord’s position is that the court should not allow the tenants to make offensive use of a prior judgment and cites the case of Parklane Hosiery Co. v Shore (439 US 322). Additionally, the landlord contends that there are different and material issues of fact which can only be decided upon a trial of the tenants’ affirmative defenses and counterclaims.
Parklane Hosiery Co. v Shore (supra) prescribes the general rule for the use of collateral estoppel in Federal courts: if the plaintiff could have easily joined in the previous action or if the application of offensive collateral estoppel would be unfair to the defendant, the Trial Judge should not permit the use of collateral estoppel. Although this is the rule for Federal courts and the instant proceeding is in State court, the Supreme Court’s criteria for defining fairness in Parklane is instructive.
*962 The Supreme Court distinguished between two forms of collateral estoppel in the Parklane decision — offensive and defensive. A plaintiff seeking to foreclose a defendant from litigating an issue that the defendant lost before against a different plaintiff is using offensive collateral estoppel. When a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost against a different defendant this is called defensive collateral estoppel. Since collateral estoppel is invoked here to preclude the landlord from relitigating the issues raised in the tenants’ affirmative defense and counterclaim, it is affirmative relief through the operation of the prior judgment, i.e., offensive collateral estoppel, that is sought, albeit not by the “plaintiff” in the action.
In this case, as in Parklane (supra), none of the circumstances that might justify reluctance to allow the offensive use of collateral estoppel is present. In the first place, the application of offensive collateral estoppel will not here reward a party who could have joined in the previous actions since the petitions against these tenants were dismissed because they were defective in material respects. Second, the landlord had every opportunity to litigate the first suit vigorously in light of the seriousness of the claims. Third, the judgment in the first action was not inconsistent with any previous decision. Finally, there will be no procedural opportunities available here that were unavailable in the first action that might be likely to cause a different result.
In Schwartz v Public Administrator of County of Bronx (24 NY2d 65), the Court of Appeals ruled that the only requirement for applying the doctrine of collateral estoppel against a party is that the party must have had a full and fair opportunity to litigate the issue, and the issue must have been decided against her/him. The landlord had ample opportunity to litigate its case in the previous proceeding which lasted 17 days. In its opposition to this motion, the landlord does not contest that it was given a full and fair opportunity to rebut the charges of the buildingwide lack of services for the period involved. The court finds that there is no merit to the landlord’s contention that there are *963 materially different issues involved here. The issues sub judice are precisely the same as those raised and resolved in the prior proceeding.
Equitable considerations must be mentioned as well. Although the original petitions against these tenants were defective, their attorneys could have waived these defects. It could be argued that it is unfair to permit these tenants to be rewarded for adopting a “wait and see attitude”. On the other hand, the landlord should not be allowed to benefit from its own mistakes. The appalling conditions involved the common areas of the building and they were clearly established at the original trial. The tenants’ motion for partial summary judgment must be granted on the question of liability. Clearly, the warranty of habitability was breached by petitioner and an abatement of the rent is warranted. Likewise, these tenants should not be deprived of their right to obtain punitive damages.
The only remaining issue is the calculation of damages for these tenants. In the prior proceeding the court heard the uncontradicted expert testimony of an officer of a major real estate firm to assist it in calculating damages. Judge Gallet, noting the appalling conditions, found a diminution in the rental value of the apartments in question and the damages resulting from the landlord’s breach of the lease contract to be 55% for the months of December of 1979 and January and February of 1980, and 27% for the months of November of 1979 and March through November of 1980. The reduction in services was buildingwide: no passenger elevator service, no heat or hot water, inadequate cleaning and routine maintenance, the front door lock remained broken after notice of disrepair and irregular garbage collection and disposal.
The tenant’s affirmations in support of their summary judgment motions assert the existence of the same conditions that were the subject of Action No. 1. They assert personal knowledge and submit documentary evidence such as “logs” kept at regular tenant committee meetings. The landlord’s opposing papers contain only its attorney’s affirmation which, lacking all probative force, is insufficient to defeat a motion for summary judgment. (See Siegel, New York Practice, § 281; Practice Commentaries, *964 McKinney’s Cons Laws of NY, Book 7B, CPLR, C3212:16, p 436.) However, even in the attorney’s affidavits the deprivation of services is not disputed. Petitioner’s argument that each tenant must show at trial that she/he was on the premises and personally affected by the “clear pattern of malevolent withholding of services” (111 East 88th Partners v Simon, supra, at p 698) is specious. It ignores the tenants’ affirmations to the contrary and posits a state of oblivion that the court finds difficult to credit. The fact the deprivation of services may have had disparate effects on different individuals did not prevent Judge Gallet from awarding an over-all percentage abatement that was the same for each tenant, nor was that over-all award without sound precedent. (See Park West Mgt. Corp. v Mitchell, 47 NY2d 316, cert den 444 US 992.)
Guided by the determination in the prior proceeding, this court hereby finds a diminution in the rental value of 50% for the months of December, 1979 and January and February of 1980, and 25% for the months of November, 1979 and March through November of 1980 on these tenants’ breach of warranty of habitability defense. (111 East 88th Partners v Simon, supra, at pp 695-696.) On their counterclaim for breach of contract, the tenants are similarly awarded a rent abatement for an additional 5% for the months of December, 1979 and January and February of 1980 and by an additional 2% for November of 1979 and March through November of 1980. (Supra, at p 696.)
As punitive damages are awarded not only to punish the wrongdoer but also to compensate the injured person for the outrage of an egregious injury, to deter future wrongdoing and to induce the aggrieved to seek redress (see 111 East 88th Partners v Simon, supra, at p 697) this court is unmoved by the landlord’s argument that multiple awards of punitive damages would inflict a kind of double jeopardy or overkill. Not only would this court be without jurisdiction to order that the punitive award in Action No. 1 be reallocated to provide shares for these tenants, but such allocation would be inappropriate. Again guided by Judge Gallet’s assessment of the extent of the egregious affront to the tenants, and his award of $25,000 to 20 tenants, or *965 $1,250 per apartment, that award is likewise ordered here to each of the three apartments sub judice.
The amount of legal fees that were awarded to the tenants’ attorney in Action No. 1 which involved a 17-day trial is clearly of no probative value in the proceedings sub judice which has been resolved on motion papers. A hearing must be held to determine this.
The petitioners’ cross motion for summary judgment for the rent that has been withheld since January 1, 1980 is granted inasmuch as this is admitted by the tenants. The landlord’s motion to strike the tenants’ jury demand is denied as moot in light of the foregoing decisions on the summary judgment motions.